1  Todd L. Bice, Esq., Bar No. 4534
   BROWNSTEIN HYATT FARBER SCHRECK
2  100 City Parkway, Suite 1600
   Las Vegas, Nevada  89106
3  (702) 382-2101

4  Patrick J. Reilly, Esq., Bar No. 6103
   HOLLAND & HART, LLP
5  3930 Howard Hughes Parkway, Fourth Floor
   Las Vegas, Nevada  89169
6  (702) 222-2500

7  Attorneys for Defendant Fremont Street Experience
   Limited Liability Company and Joseph Schillaci
8
   Philip R. Byrnes, Esq., Bar No. 0166
9  James W. Erbeck, Esq., Bar No. 659
   OFFICE OF THE CITY ATTORNEY
10 400 East Stewart Avenue, Ninth Floor
   Las Vegas, Nevada  89101
11 (702) 229-6201

12 Attorneys for Defendant The City of Las Vegas

13              UNITED STATES DISTRICT COURT

14                  DISTRICT OF NEVADA

15 AMERICAN CIVIL LIBERTIES UNION OF        CASE NO.:  CV-S-97-1419 DWH(LRL)
16 NEVADA, et al.,

17         Plaintiffs

18     v.                                   DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT
19 THE CITY OF LAS VEGAS, et al.,

20         Defendants.

21

22         Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Fremont Street

23 Experience Limited Liability Company and Joseph Schillaci (collectively "Fremont Street

24 Experience") along with the City of Las Vegas and Mayor Oscar Goodman (collectively the

25 "City") move for summary judgment.  To begin with, Plaintiffs (collectively the "ACLU") lack

26 the requisite standing to challenge at least two of the ordinances in question.

27 LVMC § 11.68.100(B) & (G) – which respectively govern vending and operating

28 sexually-oriented business within the Fremont Street Experience Mall – have not impacted these

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

Plaintiffs.  At best, the ACLU asserts that it thinks these provisions might impede speech, although it does not explain how or why, let alone speech of its members.  There is no credible threat of their enforcement impacting the ACLU.  The Constitution's justicable controversy requirement mandates more than a general dislike for laws.

Nor is a viable claim presented against the two ordinances that the ACLU asserts does curtail its activities:  LVMC § 11.68.100(H) restricts the placement of tables and structures within the Fremont Street Experience Mall, and LVMC § 11.68.100(K) restricts the act of solicitation wherein immediate demands for money or support are made.  The City amended these ordinances to specifically address the Ninth Circuit Court of Appeals' objections with prior versions.  The City narrowed its solicitation ordinance to only the act of solicitation for immediate requests.  This ordinance is now content neutral, which was Ninth Circuit's primary objection.  It is also now more narrowly drawn to focus upon the precise activity that is incompatible with the Mall's unique uses and purposes.  The same is true for the restrictions upon the placement of tables and structures within the Mall.  The City carefully tied that restriction to the prohibited act of solicitation, as far as the ACLU could be impacted.  This again ensures that the ordinance is a reasonable time, place and manner restriction that preserves numerous alternative communicative avenues.

In recognition of these changes, the ACLU finally resorts to an equal protection claim, insinuating that these ordinances are enforced in a discriminatory manner.  Predictably, this is an allegation that has no support in the words of the ordinances or their enforcement in practice.  These ordinances are facially neutral and enforced in an even-handed manner.  The ACLU has not and cannot demonstrate any invidious discrimination of the type necessary to claim an equal protection violation predicated upon selective enforcement of the law.  The ACLU's claims fail and warrant the entry of summary judgment.

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

1    This Motion is based upon the accompanying Memorandum of Points and Authorities, the

2    declarations and exhibits submitted and incorporated herewith, and any additional argument this

3    Court may choose to consider.

4    DATED this ____ day of September, 2008.

5                                     Todd L. Bice, Esq., #4534
                                      BROWNSTEIN HYATT FARBER SCHRECK
6                                     100 City Parkway, Suite 1600
                                      Las Vegas, Nevada 89106
7
                                      Patrick J. Reilly, Esq., #6103
8                                     HOLLAND & HART, LLP
                                      3930 Howard Hughes Parkway, Fourth Floor
9                                     Las Vegas, Nevada  89169

10

11                                    By:   /s/ Todd L. Bice_____

12                                    Attorney for Defendant Fremont Street Experience
                                      Limited Liability Company and Joseph Schillaci
13

14                                    Philip R. Byrnes, Esq., #0166
                                      James W. Erbeck, Esq., #0659
15                                    OFFICE OF THE CITY ATTORNEY
                                      400 East Stewart Avenue, Ninth Floor
                                      Las Vegas, Nevada  89101
16

17
                                      By:   /s/ Philip R. Byrnes_____
18
                                      Attorneys for Defendant The City of Las Vegas
19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   CONCISE STATEMENT OF FACTS**

    **A.   The Prior Ordinances.**

As this Court is aware, this case possesses a considerable history.  Several motions for summary judgment have been briefed and decided.  Two prior appeals have as well.  The focus of this considerable history concerns earlier versions of LVMC § 11.68.100(H) & (K) and LVMC § 10.44.010(A).

In the last appeal, the Ninth Circuit invalidated Section 11.68.100(K) and Section 10.44.010(A), reversing the District Court's entry of summary judgment.  *ACLU v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006).  The District Court found these two ordinances to functioned as a content neutral reasonable time, place and manner restriction upon solicitation within the Fremont Street Experience Mall.  The Ninth Circuit disagreed.  It found the solicitation restriction to be content based because the City had not "chosen to ban only the act of solicitation; rather it has prohibited messages that contain soliciting content." *Id.* at 796.  Of importance to the court was its view that the ban on solicitation covered more than requests for in-hand monetary donations. *Id.* at 794-95.

As originally crafted, LVMC § 10.44.010(A) further reached offers of information that simply requested generic support or solicited future donations.  In this way, the court explained that the City's ordinance did more than prohibit the act of solicitation (which are content-neutral) but also banned words of solicitation, which the court viewed as content-based.[1]  *Id.* at 795-96.

Additionally, the Ninth Circuit sustained the District Court's invalidation of LVMC § 11.68.100(K), which had regulated the placement of tables and other structures within the Fremont Street Experience Mall.  The court explained that "to the extent that . . . tables facilitate the dissemination of First Amendment speech," the use of the tables will be as deemed

---

[1]    In a footnote, the court also said that even if the prior ordinance were content-neutral, it would still not suffice as a reasonable time, place and manner regulation. *ACLU,* 466 F.3d at 796, n.13.  The court said that it impacted substantially more speech than was the identified source of evil that the City was seeking to combat.  In the court's view, the record indicated that it was only aggressive panhandling, solicitation and handbilling that were the problems.  Thus, the ordinance as drafted at that time, was not sufficiently tailored to combat only those problems.

expressive activity protected by the Constitution.  *Id.* at 799.  With that in mind, the court affirmed the District Court's finding that the City's ordinance included an exception for labor-related speech.  As such, the distinction violated the Equal Protection clause, because there is no legitimate governmental reason in affording preferential treatment based upon a particular subject matter, such as labor.  *Id.* at 800.

 **B.    The Amendments.**

In response to the Ninth Circuit's ruling, the City undertook material amendments to these ordinances.  First, with respect to its solicitation ordinance, the City significantly narrowed its scope and dispensed with any content-based distinction.  Now, following the Ninth Circuit's guidance, the ordinance provides that prohibited solicitation means "***the act of solicitation***, including asking, begging, soliciting or pleading, ***for the purpose of immediately obtaining***, money, charity, business or patronage, or gifts of items of value for oneself or other person or organization." LVMC § 10.44.010 (emphasis added).  By focusing upon the "act" of solicitation, the City specifically eliminated the risk of any content-based restriction.  At the same time, it likewise tied the prohibition to those circumstances where the act is being done for the purpose "of immediately obtaining" support, thus narrowing the ordinance's reach and focusing the ordinance upon the precise conduct that is most disruptive of the Fremont Street Experience Mall. *Id.*

The City similarly narrowed the scope of LVMC § 11.68.100(H).  Now, that ordinance prohibits the placement of any table or other structure "for purposes of solicitation."  Of course, in tethering the restriction upon the placement of tables and other structures within the Mall to the newly-narrowed prohibition on solicitation, the City significantly narrowed the scope of the tabling restrictions as well.

In adopting these narrower and more focused ordinances, the City again developed a considerable legislative record.  Of course, the City incorporated and relied upon the extensive record it had developed in adoption of its earlier ordinances, including but not limited to the

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

recognition of the Fremont Street Experience Mall's unique purpose and function.[2]  Again, as the City had previously established, the Fremont Street Experience Mall is covered in four of its five blocks by a steel canopy superstructure, standing ten stories high, and is approximately 1,286 feet in length.  (Doc. 125 at ¶ 8.)  This superstructure projects nightly light and sound shows utilizing its 2.1 million lights and over 500,000 watt sound system.  *Id.*  For these shows, visitors stop walking and look skyward to view the shows, essentially making them captive targets for solicitors.  *Id.* at ¶ 32.

At the same time, the Mall has various retail kiosks and other business operations within its borders.  (Doc. 125 at ¶ 26.)  Licensees pay the Fremont Street Experience licensing fees for the right to conduct business within the Mall.  (Ex. A hereto.)  In order to protect these kiosks and other merchants, the City has recognized that it is necessary and vital to preclude solicitors from competing with the very same businesses from which the Mall is obtaining licensing revenues for the privilege of doing business.  *Id.*  After all, the Mall needs these licensing revenues in order to generate sufficient monies to cover its annual operating budget.

In addition to these long-established facts, the City considered new evidence as well of the particular problems that direct solicitation, focusing upon the immediate demand for money or things of value, would have upon the Mall's business operations.  (Ex. A hereto.)  This activity would directly compete with the Mall's very existence and purpose.  *Id.* at ¶ 7.  Again, allowing solicitors to make demands upon the Mall's patrons for immediate requests for money or things of value would directly compete with those licensees that pay the Fremont Street Experience for the right to conduct business within the Mall.  *Id.* at ¶ 6-7.  Such direct competition would defeat much of the Mall's purpose.

Accordingly, following this record, the City amended its ordinances, tailoring them narrowly to focus upon the precise type of activity that would disrupt the Mall's operations and economic viability – solicitations for the immediate payment of money or items of value.  Despite

[2]  Obviously, Defendants could reincorporate all the previously-filed record concerning its ordinances.  However, that would only further burden this Court's recordkeeping with documents that are already properly before it and serving no purpose.  Accordingly, Defendants hereby incorporate those documents, Docs. 79, 80 & 125, as though resubmitted with this Motion.

1   the record the City established and its careful adherence to the Ninth Circuit's decision, the ACLU

2   resorts to its common theme that any restriction upon speech is unconstitutional.

3   **II.    ANALYSIS**

4          Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to

5   summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on

6   file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

7   and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

8   genuine issue of material fact is one that affects the outcome of the litigation and requires a trial to

9   resolve differing versions of the truth.  *S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1300-01

10  (9th Cir. 1982); *ACLU of Nev. v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1083 (D. Nev. 1998).

11  There is no material issue of fact if the evidence is such that a reasonable jury could not return a

12  verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

13         This Court must view all evidence, facts, and inferences in a light most favorable to the

14  non-moving party.  *Baker v. Centennial Ins. Co.*, 970 F.2d 660, 662 (9th Cir. 1992).  While the

15  moving party bears the initial burden of demonstrating the absence of a disputed material fact, the

16  non-moving party must respond by demonstrating the existence of a disputed material fact.  *See*

17  *Premiere Digital Access, Inc. v. Cent. Tel. Co.,* 360 F. Supp. 2d 1161, 1164 (D. Nev. 2005)

18  (requiring a non-moving party to demonstrate "significant probative evidence" to defeat a motion

19  for summary judgment).

20         **A.    The ACLU Lacks Standing To Bring Parts Of This Case.**

21         The first defect in the ACLU's case is that it lacks standing to challenge two of the

22  ordinances identified in its complaint.   "Standing is an 'essential component' of the case or

23  controversy requirement of Article III, § 2 of the United States Constitution."  *ACLUN v.  Lomax*,

24  471 F.3d 1010, 1015 (9th Cir. 2006) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir.

25  2003)).  In order to fulfill the minimum standing requirement, a plaintiff must show:  "(1) injury

26  in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision."

27  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992)).  When determining whether

28  a plaintiff meets these requirements, the court "must look at the facts 'as they exist at the time the

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

complaint was filed.'"  *Id.* (citing *Lujan*, 504 U.S. at 569 n. 4); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at the time the complaint is filed.").

To show an injury in fact, a plaintiff must "demonstrate injuries that are 'actual or imminent, not conjectural or hypothetical.'"  *ACLUN v. Heller*, 378 F.3d 979, 983 (9th Cir. 2004). While the Ninth Circuit notes, in the First Amendment context, that "it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably effected with a constitutional interest", there still must exist "a ***credible threat*** that the challenged provision will be invoked against the plaintiff."  *Id.* (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)) (emphasis added).

Here, the ACLU fails to demonstrate any injury in fact arising from LVMC §§ 11.68.100(B) and (G).  Subsection (B) restricts "[m]all vending, mall advertising, mall entertainment, special events or other commercial activities unless conducted or authorized by the Fremont Street Experience Limited Liability Company."  LVMC § 11.68.020(L) goes on to define "mall advertising" as "all advertising within or in connection with the Pedestrian Mall including, without limitation, any means of parking or promoting the Pedestrian Mall, special events, or any other ***commercial activity***, and the display of consumer goods, products or services to the users of the pedestrian mall for the purpose of encouraging the sale and purchase thereof. . . ."  (emphasis added).  Nowhere in the ACLU's complaint does it allege that it is impacted by the restrictions of LVMC § 11.68.100(B).  The ACLU has identified no circumstances where this ordinance impacts any of its purported activities, let alone the constitutional requirement that an actual or imminent threat of injury exists.

The same is true for LVMC § 11.68.100(G).  That ordinance merely provides that the operation of a "sexually-oriented business" is prohibited within the Pedestrian Mall.  But, yet again, the ACLU does not and cannot allege that this ordinance genuinely impacts the activities of its membership.  At best, the ACLU speculates that this ordinance might be used to restrict not just the operation of sexually-oriented businesses within the Mall, but also any advertising of such businesses.  Of course, the terms of the ordinance are plain and easy to understand.  It prohibits

sexually-oriented businesses from operating within the Mall.  The ACLU again misses the mark on demonstrating an actual or imminent threat of injury from the enforcement of LVMC § 11.68.100(G).  It lacks standing to bring this challenge.

**B.      The Newly-Tailored Solicitation Ordinance Is A Reasonable Time, Place And Manner Restriction.**

The ACLU glosses over the significant and material changes with the amendments to LVMC § 10.44.010 and how these changes narrow LVMC § 11.68.100(K).  The amendments focus precisely on the Ninth Circuit's concerns with the prior solicitation ordinance.  The City specifically addressed the problems that made the prior ordinance content based.  At the same time, it substantially narrowed the ordinance's reach to focus upon the precise activity that is most incompatible with the Pedestrian Mall's operations and purpose.

Indeed, the Supreme Court holds that the act of solicitation is "undoubtedly subject to reasonable regulation." *Village of Shaumburg v. Citizens for Better Environment*, 444 U.S. 620, 632 (1980).  Of course, it is "common ground, . . . that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (citing *Adderly v. Florida*, 385 U.S. 39, 47-48 (1966)).

Instead, the Court holds that even protected activities like solicitation "are subject to reasonable time, place, and manner restrictions." *Heffron*, 452 U.S. at 647.  Such restrictions are valid provided they (1) are content-neutral; (2) serve a significant governmental interest; (3) are narrowly tailored; and (4) leave open ample alternative channels of communication. *S.O.C., Inc. v. Clark County*, 152 F.3d 1136, 1145 (9th Cir. 1998).  An examination of each of these factors demonstrates that the City's new ordinance meets this standard.

*1.      The amended ordinance is now content-neutral.*

As originally crafted, the Ninth Circuit found that LVMC § 10.44.010 to be content-based because it discriminated based on content.  The court emphasized that the prior ordinance did more than impose a restriction upon the act of solicitation, which are deemed to be content-neutral.  Rather the court explained that in regulating words of solicitation for different treatment,

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

the City's ordinance crossed the line into being content-based.  Of particular concern to the court was that the ordinance was not limited to "immediate" demands for money or items of value.

The City took the Ninth Circuit's instruction and has now specifically amended LVMC § 10.44.010(A) to provide that the prohibition on solicitation means "***the act of solicitation***, including asking, begging, soliciting or pleading, for the purpose of ***immediately obtaining*** money, charity, business or patronage, or gifts of items of value for oneself or another person or organization." (emphasis added).  These changes precisely resolve the Ninth Circuit's concerns.

> **2.    The City's interests in restricting a particular type of solicitation are substantial.**

For a restriction on speech to be valid, it must "serve a significant governmental interest." *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976).  The types of interests that are deemed significant are seldom the subject of controversy.  For instance, the Supreme Court has ruled that "it is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective."  *Heffron*, 452 U.S. at 650 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972)).  As the Ninth Circuit notes:

> A government interest in protecting the safety and convenience of persons using a public forum is a valid government objective. Government interests in promoting public safety and the orderly movement of pedestrians, and in protecting the local merchant economy are also substantial.

*Perry v. Los Angeles Police Dep't*, 121 F.3d 1365, 1369 (9th Cir. 1997); *see also One World One Family Now*, 76 F.3d at 1013 ("cities have a substantial interest in assuring safe and convenient circulation on their streets.").

One factor to be considered in determining whether the government's interests are substantial is "consideration of a forum's special attributes . . . in light of the characteristic nature and function of the particular forum involved." *Heffron*, 452 U.S. at 650-51.  For instance, the Court has found that the State of Minnesota had particularly high interest in prohibiting solicitation on the state fair grounds as the fair attracts "great numbers of visitors who come to the

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

event for short period of time to see and experience the host of exhibits and attractions at the Fair." *Id.* at 651. In other words, the fair is an attraction in and of itself.

No imagination is needed to understand that Las Vegas has similar interests with respect to the Fremont Street Experience Pedestrian Mall. Indeed, the City's interests here appear even more significant. The Fremont Street Experience is covered on four of its five blocks by a steel canopy superstructure which stands ten stories high and spans 1,386 feet long. (Doc. 125 at ¶ 8.) This superstructure is the Mall's principal attraction, providing continuous sound entertainment throughout the Mall as well as nightly light and entertainment displays. (Ex. A hereto.) During the light shows that are displayed after dusk, patrons within the Mall stop walking and look skyward to view the shows, making them captive targets. *Id.* at ¶ 6. Solicitation within this visual experience would no doubt distract them and dissuade them from viewing, let alone patronizing, the Mall for this entertainment experience. *Id.* Plainly, such solicitation would directly impede the Mall's purpose in serving as an entertainment attraction. *Id.* at ¶ 7.

At the same time, solicitation that makes immediate demands for money or things of value directly competes with the vendors that the Fremont Street Experience Mall licenses to conduct business within its boundaries. (Ex. A hereto.) As the Fremont Street Experience has repeatedly emphasized throughout this litigation, it relies upon its commercial and entertainment attractions in order to generate the revenues needed to cover its multimillion dollar operating budget. *Id.* at ¶ 6. Given the Mall's special attributes, the government's interest in promoting its economic viability and protecting the orderly and enjoyable movement of visitors is entirely substantial.

> **3.    *The restriction on solicitation is now narrowly tailored to address precisely the type of activity that interferes with the Mall's operations.***

As previously outlined, the City's restriction upon solicitation now focuses upon "the act of solicitation," that involves "immediate" demands for money or support. This is far more narrow and focused in its scope than the City's prior ordinance, which the Ninth Circuit found objectionable. As this Court should recall, the Ninth Circuit's concern was that the prior ordinance prohibited all forms of solicitation, even general requests for assistance at a future place

and time.  Now, the City zeroed in on the precise type of solicitation that is incompatible with the Mall's uses.

An ordinance is narrowly tailored when it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799.  It need not be the least restrictive means of achieving the government's purpose, so long as it is narrowly tailored to that purpose.  *Id.* at 797.  Again, the City's ordinance is now narrowly tailored as it specifically bans only those solicitations seeking immediate support and, therefore, "targets precisely the activity . . . causing the problems the city legitimately seeks to ameliorate." *One World One Family*, 76 F.3d at 1014.

Instructive in this regard are two cases dealing specifically with the acts of solicitation within a defined tourist venue.  In *Smith v. City of Fort Lauderdale*, *1*77 F.3d 954, 956 (1999), the city prohibited "[s]oliciting, begging or panhandling" in its city parks and beaches.  *Id.* at 955. The plaintiffs challenged that ban which applied to a five-mile strip of beach, a one-and-a half-mile promenade sidewalk between that beach and the highway, and the commercial-area sidewalk on the opposite side of the highway.  *Id.*

Despite its broad reach and scope, the Eleventh Circuit upheld the ordinance as narrowly tailored because it promoted the government's legitimate interest in preserving a favorable tourism environment for the city's tourist district:

> [The Ordinance's] restrictions on begging in the Fort Lauderdale Beach area are narrowly tailored to serve the City's interest in providing a safe, pleasant environment and eliminating nuisance activity on the beach.  ***The City has made the discretionary determination that begging in this designated, limited beach area adversely impacts tourism***.  Without second-guessing that judgment, ***which lies well within the City's discretion***, we cannot conclude that banning begging in this limited beach area burdens substantially more speech that in necessary to further the government's legitimate interest.

*Id*. at 956 (emphasis added).

The Ninth Circuit employed a similar analysis in *One World One Family*, where a City of Honolulu ordinance prohibited the sale of expressive merchandise on certain city streets.  76 F.3d at 1011.   Two non-profit groups challenged the ordinance, disputing that the prohibition

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

1  merchandise was narrowly tailored.  *Id.*  The Ninth Circuit, however, found the ordinance to be a

2  permissible time, place and manner restriction.  *Id.* at 1016.

3       After noting the City's substantial interests in promoting tourism and protecting the local

4  merchants who cater to tourists, the court explained that the ordinance was indeed narrowly

5  tailored:

6       Honolulu's peddling ordinance is narrowly tailored to serve these
         interests because they would be achieved less effectively absent the
7       regulation.  Without the ordinance, sidewalk vendors (commercial
         and charitable alike) would be free to peddle their wares on
8       Kalakaua and Kuhio Avenues, undermining the city's efforts to
         provide a pleasant strolling and shopping area.  A proliferation of
9       sidewalk vendors could also aggravate the congestion on already
         crowded sidewalks and siphon off sales from local merchants.
10      Because the peddling ordinance addresses these problems without
         significantly restricting a substantial quantity of speech that does
11      not create the same evils, [the ordinance] is narrowly tailored.

12 *Id.* at 1013-14 (internal citations and quotes omitted).

13      The ACLU cannot seriously dispute the City's interest in preserving the Mall as a tourist

14 attraction as well as its economic viability are not achieved less effectively absent the ordinance.

15 Obviously, when adopting the original ordinance, the City developed an extensive record on the

16 need to address solicitation within the Mall.  (Doc. 79, 80 & 125.)  Indeed, the Ninth Circuit noted

17 this very point, but concluded that the City's failure to focus the restriction upon the "immediate"

18 demand for money or things of value caused the ordinance to reach substantially more speech

19 than necessary.  *ACLU*, 466 F.3d at 796, n. 13.  Now, the City has narrowed the scope of the

20 solicitation restriction to make sure that it is tied precisely to the types of problems that the City

21 seeks to prohibit in order to preserve the Mall's viability as a tourist attraction and economic

22 engine.

23      By way of example only, the City of Las Vegas Recommending Committee for the

24 creation of the Mall, it is necessary to try and best preserve the Mall's atmosphere as a

25 commercial venture because it was intended to eventually pay for itself by generating revenue for

26 the operating entity by attracting tourists to the area.  (Doc. 125 at Ex. A, p. 25-27.)  The City also

27 heard and considered testimony as to the adverse impacts that personal solicitation would have

28 upon the Fremont Street Experience.  *Id.* at p. 23-24.  The City also considered the opinions of

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

marketing experts as well as the views of the Las Vegas Convention & Visitors Authority that personal solicitation would be disruptive and would interfere with the City's ability to maintain a clean, safe, unobstructed and controlled environment necessary in order to attract tourists and prospective tenants.  *Id.*

But the City did not rest upon its past findings.  Rather, when amending its ordinances, the City kept its focus upon the precise problem that would be most disruptive to the Mall's operations – the act of solicitation whereby people make immediate demands for money or support.  (Ex. A hereto.)  These acts would directly compete with the Mall's business licensees who pay for the right to conduct business within the Mall.  *Id.; see Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 979 (9th Cir. 1998) (city can restrict speech that interferes with revenue generating capacity of government-owned advertising space); *Lebron v. National Railroad Passenger Corp.*, 69 F.3d 650, 656 (2d Cir. 1995) (government can preserve revenue generating capacity of its property by excluding forms of expression that compete with or threaten those revenues).

At the same time, conduct whereby people are pressured for an immediate response to the solicitation are wholly disruptive of the Mall's entertainment purpose and attractions.  (Ex. A hereto.)  Again, no one disputes that the Mall's primary function is to serve as a tourist attraction. It does this through its state of the art high-tech light canopy and sound system.  It provides daily and nightly entertainment attractions such as bands and other items in order to draw tourism to support the business that then fund the Fremont Street Experience's operating needs.  *Id.* at ¶ 6-7.

Plainly, allowing direct solicitation whereby the Mall's patrons are pressured for immediate support defeats that entertainment environment – an environment that the City has a legitimate interest in maintaining.  It is that environment that attracts the tourists who in turn patronize the various retail outlets that pay the Fremont Experience for the right to conduct business within the Mall's boundaries.  While the ACLU's role as speech guardian is certainly important, even it cannot credibly dispute that the City's substantial governmental interests are not achieved less effectively absent its restriction upon this narrow and particular type of disruptive solicitation.

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

Indeed, the City's ordinance here is far more narrowly tailored than either of those in *Smith* or *One World One Family*. Recall, the ordinance in *Smith* prohibited solicitation on a five-mile strip of beach and two attendant sidewalks. 177 F.3d at 955. Likewise, the ordinance in *One World One Family* prohibited vending "upon the public streets, alleys, sidewalks, malls, parks, beaches and other public places in Waikiki." 76 F.3d at 1011. The City's ordinance applies to a far more limited area and is then only those solicitations for immediate payment of money or for other support.

### 4. The City preserved alternate channels of communication.

Finally, the City's ordinance leaves open ample alternative channels of communication. "An adequate alternative does not have to be the speaker's first or best choice." *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000) (citing *Heffron*, 452 U.S. at 647). Nor does the alternative need to provide the same audience or impact for the speech. *See Ward*, 491 U.S. at 802; *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 809 (1985). Again, as previously noted, the Eleventh Circuit found that the City of Fort Lauderdale's ban on solicitation on a five-mile stretch of beach was "materially mitigated by the allowance of begging in streets, on sidewalks, and in many other public fora throughout the City." *Smith*, 177 F.3d at 957.

Here, the City's ordinance only prohibits those acts of solicitation seeking immediate support. It does not reach other forms of solicitation, such as passing out literature that seeks donations at a future place or time. Moreover, the City has left open almost everywhere else within its borders for such broader solicitation. The narrow type of solicitation that the City restricts is only proscribed in the following limited areas in addition to the Mall:

        (A)     At any bus, taxi, limousine, trolley or train stop;

        (B)     In any public transportation vehicle or facility;

        (C)     At any enclosed parking structure;

        (D)     Within twenty feet of any Automatic Teller Machine (ATM);

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

(E)    Within ten feet of a point of entry to or exit from any building open to the public, including commercial establishments;

LVMC § 10.44.030.

Not even the ACLU contends that those restrictions are problematic. Individuals and organizations are provided with a multitude of outlets for solicitation throughout the City. Indeed, in passing LVMC § 10.44.030, the City specifically found that "the sidewalks outside the Pedestrian Mall are accessible by those who would solicit the general public and it is anticipated that these sidewalks will be frequented by an overwhelming percentage of Pedestrian Mall users." (Doc. 125 at Ex. A, p. 9-10). As a result, the City also found that LVMC § 10.44.030 provides "ample non-aggressive, non-obtrusive or otherwise peaceful means of solicitation activity." *Id.*

In sum, LVMC § 11.68.100(K) is a reasonable time, place and manner restriction on a particular form of solicitation. The ordinance is content-neutral. It applies only to the "act" of solicitation and then only those solicitations demanding immediate support. Las Vegas unquestionably has a substantial interest in promoting the revenue generating capacity of the Pedestrian Mall, as well as protecting the orderly movement of pedestrians in this unique environment. A restriction upon immediate demands for money or support, which is all the City has done, is narrowly tailored to achieving those ends. And, anyone interested in making immediate solicitation demands are free to do so throughout almost all other areas of the City. The alternative channels to solicit funds are more than ample.

## C.    The City's Restriction Upon Tables And Other Structures Is Also Constitutional.

In the prior appeal, the Ninth Circuit held that the use of tables could, under certain circumstances, be protected under the First Amendment. The court explained that "the erection of tables in a public forum is expressive activity protected by our Constitution ***to the extent that the tables facilitate*** the dissemination of First Amendment speech." *ACLU,* 466 F.3d at 799. The court found the City's prior prohibition defective because LVMC § 11.68.100 contained an exception for labor-related speech in the court's view. The court explained that the ordinance was

1    invalid on an as-applied basis by prohibiting the use of tables by some but having an exception for

2    labor-related speech.

3        In response, the City amended its ordinances to entirely eliminate the labor exception.  In

4    fact, the City went even further in narrowing the scope of its ordinance.  Now, it provides that

5    only the placement of any "table, rack, chair, box, cloth, stand, booth, container, structure or other

6    object within the Pedestrian Mall *for purposes of solicitation* that are prohibited."

7    LVMC § 11.68.100(H) (emphasis added).  Thus, the scope of the City's prohibition upon the use

8    of structures is parallel to its constitutionally-permissible restriction upon solicitation.

9        The ACLU cannot identify any circumstances where their ability to erect a table that is

10   used to "facilitate the dissemination of First Amendment speech" (as the Ninth Circuit requires) is

11   in any way implicated by the new provisions of the City's ordinance.  As the prohibition on

12   solicitation is narrowly tailored, so too is the City's prohibition upon the use of structures to

13   "facilitate" prohibited solicitation.[3]

14       **D.    The ACLU Presents No Viable Equal Protection Claim.**

15       Unable to credibly assert that the City's revised ordinances do not satisfy First

16   Amendment standards, the ACLU makes one final pitch – that these otherwise constitutional

17   ordinances are selectively enforced against them, thus violating equal protection.  According to

18   the ACLU, it has an equal protection claim because the City's ordinances are not enforced

19   even-handedly against others, as opposed to the ACLU.  (Complaint at ¶ 51-52).  There are two

20   problems with the ACLU's assertion:  the facts and the law.

21       First, contrary to the ACLU's unsupported assertion, the Fremont Street Experience does

22   not enforce the laws in any discriminatory manner whatsoever.  (Ex. A hereto at ¶ 8.)  Second, the

23   ACLU's complaints of selective enforcement do not give rise to an equal protection claim.  To

24   state an equal protection claim based upon assertions of selective enforcement requires more than

25

26   [3]     In the prior appeal, the Ninth Circuit expressly noted that the ACLU could not maintain a
     facial challenge upon any prohibition on the use of tables, because that is not conduct commonly
27   associated with expression.  And, again, the ACLU can present no as-applied challenge, because
     it cannot identify any circumstances where the use of tables is prohibited in a manner that would
28   not otherwise constitute prohibited solicitation.

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

1
2
3

a generic claim that the laws are not being enforced against others.  "Mere selective enforcement of a law is not unconstitutional. . . ."  *Durruthy v. Pastor*, 351 F.3d 1080, 1091 (11th Cir. 2003). What a plaintiff must show is intentional discrimination based upon improper grounds.  *Id.*

4
5

The ACLU has presented nothing in this case that could remotely establish an equal protective claim based upon selective enforcement.

6

**III.    CONCLUSION**

7
8
9
10
11
12
13
14
15

Following the prior appeal, the City undertook a careful review of its ordinances.  It eliminated the problems with its solicitation ordinance by specifying that it applies only to the act of solicitation and then only to those solicitations that seek immediate support.  These are precisely the type of disruptive activities that the City is entitled to prohibit in order to preserve the Fremont Street Experience Pedestrian Mall's viability as a tourist destination and successful economic enterprise.  At the same time, the City narrowly tailored its restriction upon the use of tables to match the prohibited act of solicitation.  While the ACLU is unquestionably opposed to any type of restrictions upon speech, the restrictions that the City has now revised are constitutional.

16
17
18

At the same time, merely crying selective enforcement does not give rise to an equal protection claim.  The ACLU is not the victim of invidious or intentional discrimination.  Its challenges fail, and the defendants are entitled to summary judgment.

19

DATED: September 22, 2008.

20
21

Todd L. Bice, Esq., #4534
BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106

22
23
24

Patrick J. Reilly, Esq., #6103
HOLLAND & HART, LLP
3930 Howard Hughes Parkway, Fourth Floor
Las Vegas, Nevada  89169

25
26

By:    /s/ Todd L. Bice

27

Attorney for Defendant Fremont Street Experience
Limited Liability Company and Joseph Schillaci

28

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

Philip R. Byrnes, Esq., #0166
James W. Erbeck, Esq., #0659
OFFICE OF THE CITY ATTORNEY
400 East Stewart Avenue, Ninth Floor
Las Vegas, Nevada   89101


By:   /s/ Philip R. Byrnes

Attorneys for Defendant The City of Las Vegas

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Brownstein Hyatt Farber Schreck, and that on this day I deposited for mailing in the U.S. Mail at Las Vegas, Nevada, a true copy of the following enclosed in a sealed envelope upon which first class postage was prepaid:

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO:

> Allen Lichtenstein
> 3315 Russell Road, #H222
> Las Vegas, NV 89120

DATED: September 22, 2008.

_____
An Employee of Brownstein Hyatt Farber Schreck

BROWNSTEIN HYATT FARBER SCHRECK
100 City Parkway, Ste. 1600
Las Vegas, Nevada 89106
(702) 382-2101

21984\1\1198625.1

20